UNION TRUST BANK v. LILLIAN S. BURNETT, et al.

Eastern Section. December 18, 1926.

Petition for Certiorari denied by Supreme Court, April 23, 1927.

Robert Burrow and Geo. W. Warren, of Bristol, for appellant.
Walter R. Burnett, of Bristol, for appellee.

THOMPSON, J. The complainant bank filed the bill in this cause against Lillian S. Burnett and husband, Walter R. Burnett, to recover upon two promissory notes as follows: one note for $500 made by Lillian S. Burnett to Sam H. Thompson on June 1, 1922, payable twelve months after date, and endorsed by said Sam H. Thompson; the other note for $1144.34 made by Lillian S. Burnett and Walter R. Burnett to complainant bank on March 8, 1923, and payable sixty days after date.

The Chancellor gave complainant a decree for principal, interest and attorney's fees on the larger note, but denied complainant a recovery on the smaller note. From so much of the decree as denied a recovery on the smaller note complainant bank appealed to this

court (Court of Appeals) and assigned error. This court (Court of Appeals) overruled the assignment of errors and affirmed the decree of the Chancellor denying a recovery on the smaller note. The complainant then applied to the Supreme Court for the issuance of a writ of certiorari, etc., but that court denied the writ, etc.

Later, and on August 9, 1926 (within two years after the decree of the Chancellor on December 1, 1924) the defendants applied to Judge Portrum, one of the judges of this court (Court of Appeals), for a writ of error to review so much of the decree of the Chancellor as allowed complainant bank a recovery on the larger note. Judge Portrum granted this application, etc., and assignment of errors, brief and reply brief having been filed, the cause is now before us on the question of whether or not that part of the decree which allowed complainant a recovery on the larger note was erroneous.

The cause having been tried in the chancery court prior to the passage of the act creating this court, we do not attempt to make a finding of facts, but simply state what in our opinion the record shows the facts and contentions of the parties to be and our conclusions thereon.

Mr. and Mrs. Burnett lived at or near Kingsport, Tennessee, owned some valuable property there, and were solvent.

The complainant, Union Trust Bank was located at Bristol, Tennessee, and Mr. S. H. Thompson was its president.

During the year 1921, Mrs. Burnett signed a negotiable promissory note for approximately $2500, payable to the bank and borrowed that sum from the bank on said note, the bank thus becoming the due and lawful owner and holder thereof. This loan was negotiated through Mr. S. H. Thompson, president, but before it was made Mr. George M. Warren, who was not only a director and member of the loan committee of said bank, but also its active attorney, went to Kingsport, investigated the properties and standing of Mr. and Mrs. Burnett, and reported favorably upon their solvency, etc.

About the time this loan was made to Mrs. Burnett, she bought from the bank $2000 (par value) of its capital stock, for the sum of $2500. She paid $500 in cash, and the balance several months later.

Counsel for Mr. and Mrs. Burnett insist that the record shows that she borrowed the $2500 (for which she executed her note) to pay for the stock, and that she put up her stock (or permitted the bank to hold it) as collateral security for her said note. However, we think the preponderance of the evidence shows that the $2500 loan from the bank to her was a straight loan in the ordinary course of business, and was a separate transaction from her purchase of the stock, although she probably used some of the money thus pro-

cured in paying for her stock. We also think that the greater weight of the evidence shows, that the bank did not hold Mrs. Burnett's stock as collateral security for her note, although the stock seems to have been left in the possession of Mr. Thompson—probably to secure the balance of its purchase price which Mrs. Burnett, as stated, did not pay for several months.

Mrs. Burnett's note matured in sixty or ninety days after date, and upon its maturity she paid the interest, made a partial payment upon the principal, and gave the bank a renewal note due sixty or ninety days thereafter. She continued from time to time, paying interest, making partial payments upon the principal, and giving renewal notes, etc., until March 8, 1923, upon which date she had reduced the principal to the sum of $1144.34, and gave the larger note sued upon in this cause, her husband being a joint maker.

Now to go back a little. About the first of March, 1922, Mr. Thompson began negotiating with Mr. and Mrs. Burnett to trade to them two land bonds (aggregating $3000) secured by land in the State of Virginia, for her bank stock and $500 in cash. These negotiations continued, and upon June 1, 1922 ended in a trade whereby Mr. Thompson gave said land bonds to Mrs. Burnett for her bank stock and the smaller ($500) note sued upon in this cause.

Very shortly thereafter, Mrs. Burnett discovered that said land bonds were worthless. She then demanded of Mr. Thompson that he return her stock to her, but Mr. Thompson told her that he had put up her stock at another bank as collateral security for a loan of his own.

When the $500 note matured on June 1, 1923, she did not pay it, and the $1144.34 note being also past due and unpaid, the bank brought this suit on November 14, 1923, to recover upon both notes, it insisting that it had bought the $500 from Thompson and was the due and lawful owner and holder of it, as well as the $1144.34 note. Mr. Thompson was not made a party defendant because he had become hopelessly insolvent and had gone into bankruptcy.

Undoubtedly Thompson perpetrated a gross fraud upon Mr. and Mrs. Burnett in the trade of the worthless land bonds for her bank stock and her $500 note which was therefore without consideration, and the Chancellor held that the bank was not entitled to recover on said $500 note because it had failed to carry the burden of proving that it had bought it from Thompson and had become an innocent purchaser thereof in due course of trade, etc. As stated, this holding has been approved by this court and by the Supreme Court.

But the Chancellor, as stated, gave the bank a recovery on the $1144.34 note; the decree thereon being as follows:

"Defendants are liable in this suit for the larger of the two notes sued upon. They got the bank's money representing said note, and

nothing of which they may have right to complain as against said note in connection with the transaction out of which the other note grew, is deemed sufficient to defeat the bank in the collection of the first mentioned ($1144.34) note.

"Complainant, Union Trust Bank, is therefore, hereby granted a recovery against defendants, Lillian S. Burnett and (Walter R. Burnett, on the note for $1144.34, principal, with $102.98 interest on same, from sixty days after March 8, 1923, and $124.73 being the ten per cent attorney's fee called for therein, making the total sum of thirteen hundred seventy-two and 5/100 dollars ($1372.05)."

We think this decree of the Chancellor was correct.

It is true that Mr. and Mrs. Burnett testified that all the way through the transactions involved they dealt with Mr. Thompson as president of complainant bank, and not merely as an individual, etc., and that he assured them that the bank would carry her $1144.-34 note, as well as her $500 note, until she could realize on the land bonds, which she never did as they were worthless. But the $500 note was made payable to Mr. Thompson and not to the bank. The bank stock seems to have simply been endorsed in blank by Mrs. Burnett and turned over to Mr. Thompson. And in a letter which Mr. Thompson wrote to the Bank of Kingsport on March 17, 1922, enclosing said land bonds with instructions to turn them over to Mrs. Burnett upon receipt from her of $500 in cash, he called attention to the fact that he personally had endorsed said bonds, and he did not say that the bank would endorse them. While the record does not affirmatively show that either Mr. or Mrs. Burnett saw this letter, it is hardly probable that they did not.

But, however, this may be, the bank in the very beginning was the due and lawful owner of the original $2500 note, of which the $1144.34 note was (after curtailment) a renewal, and the most that can be said for defendants is that Thompson, in his efforts to personally defraud them in the trade of his land bonds to Mrs. Burnett for her stock and $500 note, promised them (as president of complainant bank) that said bank would carry said $1144.34 note until Mrs. Burnett could realize upon the land bonds. And we think it clear that he had no authority from the bank to make such promise, as the bank had no interest in or knowledge of his efforts to trade her his land bonds.

Moreover, on October 10, 1922, Mrs. Burnett paid $955.66 on the note of which the $1144.34 note was a renewal, and this was long after she had discovered that the land bonds were worthless. Also, she seems to have given at least one other renewal note after she had discovered that the land bonds were worthless and prior to the giving of the $1144.34 note.

It appears also that in the conversations between Mr. and Mrs. Burnett and the officials of the bank prior to the institution of the suit, they not only did not deny their liability upon the $1144.34 note, but in fact promised several times to give security for it, and also went as far as to offer to pay it provided the bank would cancel or surrender the $500 note.

We notice also that Mr. and Mrs. Burnett did not apply to this court for a writ of error to reverse the decree against them on the $1144.34 note until August 9, 1926, which was after the Supreme Court had denied the bank's petition for certiorari and had thereby affirmed the holding against the bank on the $500 note. This of course would be no basis upon which to decide the case, but it is worthy of consideration.

Upon the whole record we think the Chancellor was correct in allowing the bank the recovery on the $1144.34 note, and his decree will be affirmed.

The writ of error will be dismissed at the cost of Mr. and Mrs. Burnett.

Portrum and Snodgrass, JJ., concur.